# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DWIGHT S. DENLINGER,** | C.A. No. 06-231 Erie |
| Plaintiff | |
| vs. | District Judge Sean J. McLaughlin |
| | Magistrate Judge Susan Paradise Baxter |
| **JOANNE B. BARNHART,** | |
| **Commissioner of Social Security** | |
| Defendant | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is recommended that the Motion for Summary Judgment filed by Plaintiff [Document # 9] be granted. It is further recommended that the Motion for Summary Judgment filed by Defendant [Document # 13] be denied. This matter should be remanded to the Social Security Administration for further proceedings.

**II     REPORT**

   **A.     Procedural Background**

Plaintiff (Denlinger) brings this action pursuant to Section 216(i), 223 and 1614(a)(3)(A) respectively of the Social Security Act (the Act), seeking judicial review of a final decision by the Commissioner of Social Security denying his Application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments.

1

Plaintiff filed an application for these benefits on December 30, 2003.  R. 58-60.[1]
Plaintiff's application was initially denied on March 8, 2004.  R. 48-51, 221-224.  The denial of benefits notice advised Plaintiff that even though his condition prevented him for working at that time, the Administration concluded that Plaintiff should be able to return to substantial gainful employment prior to October 8, 2004.  Id.

On May 9, 2004, Plaintiff requested a hearing.  After the hearing, on June 12, 2004, an Administrative Law Judge (ALJ) denied Plaintiff's claim.  R. 10-19.  Plaintiff sought administrative review from the SSA's Appeals' Council on July 21, 2006, which was denied by Order of the Appeals' Counsel dated September 15, 2006.  R. 5-7.

Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Both Plaintiff and the Commissioner have filed a motion and cross-motion, respectively, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and the matter is ripe for disposition by this Court.

### B. Factual Background

Plaintiff was born on July 30, 1966, and was 39 years old when the Commissioner issued her final decision.  R. 14.  Plaintiff is a single parent. R. 25.  He has a tenth grade education and no GED (R. 19, 25) and has past relevant work experience as a restaurant manager and a truck driver (R. 14, 25-26).  Plaintiff alleges that he has been unable to work since October 18, 2003, due to severe injuries sustained in an automotive accident.

---

[1] The Court's recitation of relevant facts is derived from the transcript of the administrative record filed by the Commissioner as part of her answer in accordance with § 205(g)of the Act, 42 U.S.C. § 405(g), which is referred to hereinafter as "R."  Additional citations appear as necessary.

2

### C. Medical Background

#### Initial Hospitalization

Plaintiff alleges that he became disabled when he was an unrestrained front seat passenger of an automobile that lost control, flipped twice and hit a telephone pole. R. 99, 133. Following the accident, a series of x-rays and a CAT scan revealed the presence of a significant wedge/compression fracture of claimant's thoracic spine at T11 and a comminuted fracture of his distal right clavicle. While hospitalized at Allegheny General Hospital, Plaintiff displayed a somewhat restricted affect, but his thoughts were coherent, his memory was grossly intact and he denied feeling depressed or anxious. R. 118.

Plaintiff was fitted with a thoracic lumbar sacral orthosis (TLSO) brace which he wore for six to ten weeks following the accident. R. 28, 109, 136, 151. Plaintiff was given a sling for his right arm and was discharged from the hospital on October 22, 2003. R. 109, 151. Plaintiff's discharge diagnosis indicated that Plaintiff had suffered a T11 fracture, a closed head injury and a clavicular fracture. R. 151-152. At the time of the discharge, Plaintiff was prescribed Percocet and Valium. R. 151-152.

#### Primary Care Physician - Dr. Gent

On November 25, 2003, Plaintiff was examined by Dr. Joseph Gent, a specialist in internal medicine. R. 147. Plaintiff reported using Flexeril and Vicodin for pain control, which did not work. Id. Plaintiff requested a referral to a local orthopedic specialist because he could not follow up with the specialist in Pittsburgh due to difficulties with transportation. Id. Plaintiff was wearing a stiff upper body brace and his back showed tenderness and irregularity over the lower thoracic area. Id. Dr. Gent recommended a Duragesic patch for pain and indicated that Plaintiff was "incapacitated" by the pain of his injuries. Id.

On December 8, 2003, Plaintiff was examined by Dr. Gent who reported that there was no change in Plaintiff's examination. R. 144. Plaintiff indicated that he could not tolerate the Duragesic patch (or the Vicodin and Percocet, prescribed earlier) due to shakiness. Plaintiff's pain level was "quite severe." R. 144. An x-ray indicated that the compression fracture was

3

"quite severe" and "quite impressive." R. 144. Dr. Gent prescribed Ultracet and Tenormin. R. 144.

On December 10, 2003, Dr. Gent completed a state welfare form indicating that Plaintiff was temporarily disabled until March 1, 2004, due to a severe compression fracture of his thoracic spine at T11. R. 141.

### Orthopedic Specialist - Dr. Woods

On January 9, 2004, Plaintiff consulted with Dr. Robert Woods, an orthopedic surgeon, for an evaluation of his back. R. 136, 138. Plaintiff complained of an intolerance of pain medications and complained of fatigue after activity. Id. Dr. Woods recommended physical therapy. Id.

On January 21, 2004, Plaintiff contacted Dr. Gent complaining of back pain. R. 137. Dr. Gent noted that Plaintiff was receiving medications from Dr. Silvis, a neighbor and friend, and gave Plaintiff ten tablets of Vicodin to hold him over until he could contact Dr. Woods. Id.

Plaintiff returned to Dr. Woods on February 4, 2004, complaining of excruciating pain as a result of physical therapy. R. 178.

### Primary Care Physician - Dr. Silvis

Two weeks after Plaintiff's December 9, 2005, administrative hearing, Plaintiff submitted a letter dated December 23, 2005, to the ALJ signed by Dr. David Silvis, along with Dr. Silvis' treatment records. R. 207-208. Dr. Silvis identifies himself as a personal acquaintance of Plaintiff for over ten years (R. 207) who practices internal medicine and emergency medicine and is "boarded in EM" (R. 207). Dr. Silvis explains that he "take[s] care of most of my neighbors for minor medical problems and treat them as friends, but send them to their own physicians for extensive problems." R. 207. Dr. Silvis further explains that he "suggested several times that [Plaintiff] find a personal physician but he appeared to feel more comfortable with someone he knew and trusted." R. 207.

Dr. Silvis indicates that Plaintiff has a history of panic attacks when under stress. R. 207.

4

Symptoms include palpitations, shortness of breath, nausea, profuse sweating, dizziness and insomnia. Plaintiff frequently called upon Dr. Silvis for emotional support. Dr. Silvis treated Plaintiff with beta blockers and ansiolytics with modest success. During especially difficult times, Dr. Silvis also prescribed tranquilizers and hypnotics. Dr. Silvis also prescribed Zoloft which Plaintiff did not tolerate well.

Following Plaintiff's accident, his panic attacks "became progressively worse secondary to his inability to work brought on by persistent and severe pain in his back." R. 208. Dr. Silvis treated Plaintiff with "emotional support," occasional analgesics, narcotic pain relief and muscle relaxants. R. 208. Dr. Silvis concludes:

> At present, Mr. Denlinger has frequent attacks of considerable pain. He can neither sit nor stand for significant periods of time and has to shift back and forth to maintain a tolerable level of pain control.
>
> * * *
>
> The panic attacks have become severe, exacerbated by chronic pain and frustration over the inability to work or properly perform daily tasks for any extended period of time. He told me that it is a struggle to be able to maintain his home for his children but that he manages. Recently, Mr. Denlinger was [sic] been wavering between phases of depression and manic agitation. Since he has an intolerance to SSRI's, I prescribed Depakote to modulate his mood swings. It has been somewhat successful. I will see him again in January to evaluate the effectiveness of his new therapy. In summary, at the present time, Mr. Denlinger suffers from panic attacks with dizziness and palpitations, frequently debilitating chronic pain syndrome and manic depressive episodes.

R. 208.

### D. The Administrative Law Judge's Decision

A disability hearing was conducted on December 9, 2005. Plaintiff, who was represented by counsel, testified at this hearing. R. 22-44.

On June 12, 2006, the ALJ issued his decision. The ALJ made the following findings which are listed verbatim from his decision:

    1.    The claimant is 39 years old, defined as a younger person. He has a 10th

5

>    grade education and a semi-skilled work background.
>
> 2. The claimant has not engaged in substantial gainful activity since his alleged onset date.
>
> 3. The claimant has more than minimal physical work limitations.
>
> 4. The claimant does not have an impairment that meets or medically equals any listing in Appendix 1.
>
> 5. The claimant regained the residual functional capacity to perform at least sedentary work on a sustained basis by February 2004, therefore his impairments and subjective pain have not prevented him from engaging in SGA for a continuous period of at least 12 months.
>
> 6. The claimant lacks the exertional capacity to return to past relevant work.
>
> 7. Nevertheless, from and after February 20, 2004, the claimant's occupational base has included the full range of unskilled sedentary work.

R. 16-20 (internal citations omitted).

### E.     Standards of Review

The Social Security Act provides limited judicial review of a final decision of the Commissioner (effectively that of the ALJ where, as in this case, the Appeals Council has denied the applicant's request for review). In reviewing the Commissioner's decision, this Court may not decide facts anew, reweigh the evidence, or substitute this court's judgment for that of the Commissioner or, by extension, the ALJ. See Herron v. Shalala, 913 F.3d 329, 333 (7th Cir. 1994). Rather, this Court must affirm a decision if it is supported by substantial evidence and the ALJ has made no error of law. 42 U.S.C. § 405(g); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Pierce v. Underwood, 487 U.S. 552, 564-65 (1988) quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938). See also Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

A disability is defined under the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A) (Supp. 2002); 20 C.F.R. § 404.1505(a) (2002). A claimant is unable to engage in substantial gainful activity when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The Commissioner must perform a five-step sequential evaluation process to make disability determinations under the regulations. See 20 C.F.R. § 416.920. If the claimant fails to meet the requirements at any step in the process, the Commissioner may conclude that the claimant is not disabled under the Act. The ALJ must determine, in order: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R pt. 404, subpt. P, app. 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity. See 20 C.F.R. §§ 404.1520, 416.920; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000).

Plaintiff has the burden of establishing that he is disabled under the Act. See 20 C.F.R. §§ 404.1512, 416.912.

### F. Discussion

Plaintiff argues, inter alia, that the ALJ failed to adequately consider and explain his rejection of competent medical evidence supporting the claim. Plaintiff argues that the ALJ did not engage in a complete analysis in regard to Plaintiff's mental health issues as documented by Dr. Silvis, his primary care physician.[2]

---

[2] As a corollary to that argument, Plaintiff argues that the ALJ committed error by not addressing the impact of the mental impairment on Plaintiff's ability to perform work.

7

The ALJ opined as to Plaintiff's alleged mental impairments:

> The claimant also testified that he suffers from mental depression. However, he has not been under the care of a psychiatrist or other mental health professional, and I find that he does not have a mental impairment that could reasonably be expected to cause more than minimal work limitations. David M. Silvis, M.D., an internist who practices emergency medicine almost exclusively, reported on December 23, 2005, that he and the claimant have been acquaintances for about 10 years, during which time the claimant has often called upon him for emotional support and prescriptions for medications, including hypnotics and tranquilizers. Dr. Silvis explained that he takes care of his friends and neighbors for minor medical problems, but that he sends them to their own personal physicians if they need more extensive care. Though Dr. Silvis has repeatedly advised him to do so, the claimant has made no attempt to obtain a personal physician, nor has he sought treatment from a mental health professional.
>
> Dr. Silvis averred on December 23, 2005, that the claimant 'suffers from panic attacks with dizziness and palpitations, frequently debilitating chronic pain syndrome and manic depressive episodes.' However, this opinion makes no sense in light of the normal objective findings cited and discussed below. Furthermore, it does not fall within the realm of a medical internist's professional expertise to make psychiatric findings or diagnose psychiatric conditions.
>
> A mental status examination of the claimant at Allegheny General Hospital on October 21, 2003, produced unremarkable findings. He displayed a somewhat restricted affect, but his thoughts were coherent, his memory was grossly intact, and he denied feeling depressed or anxious. Crediting these unremarkable findings, which controvert the credibility of the claimant's testimony alleging serious depression, I find that he does not have documented affective disorder or mood disturbance with the mental signs and symptom specified in part A of the Listing, or more than mild limitations in any of the four categories in part B (i.e., activities of daily living; social functioning; concentration, persistence or pace; and extended episodes of decompensation in work or work-like settings.).
>
> Exhibit 4E and the claimant's testimony consistency show that he is no more than mildly limited in the realm of activities of daily living, social functioning, and concentration, persistence or pace. He maintains a household for himself and his three young daughters (ages 13, 11 and 1). He shops, cooks, and does laundry, and he and his two eldest daughters work together to keep the house clean. The claimant attends to his personal care needs independently, and his hobbies and interests include computers, fishing and camping. He testified that he has friends who take him shopping. In addition, he testified that he drove to Indiana a few months before the hearing to attend his grandmother's funeral. The record does not show that he has had any extended episodes of mental decompensation.

R. 15-16.

The reports of treating physicians should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) quoting

8

Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987); 20 C.F.R. § 404.1527(d)(2) (providing for controlling weight where treating physicians opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record). An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. Davis v. Apfel, 149 F.Supp.2d 99, 108 (D. Del. 2001) quoting Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985). A physician's opinion is given controlling weight when that physician is a treating physician, whose opinion is well-supported by objective evidence, and consistent with other evidence of record. 20 C.F.R. § 404.1527; § 416.927 (2006). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. Id. quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

In this case, there was no medical evidence contradicting the assessment made by Dr. Silvis, yet the ALJ rejected Dr. Silvis' assessment based upon his own credibility determinations. The ALJ used Plaintiff's mental state at the hospital immediately following his accident (where he denied feeling anxious or depressed while he was admittedly under the influence of alcohol and presumably in great pain due to his severe physical injuries) to contradict the later assessment by Dr. Silvis (a significant period of time later) that Plaintiff suffered from increased severity of panic attacks "exacerbated by chronic pain and frustration over the inability to work or properly perform daily tasks for any extended period of time"(R. 208.). As such, this case should be remanded for a consultative mental health evaluation.

## III. CONCLUSION

For the foregoing reasons, it is recommended that the Motion for Summary Judgment

filed by Plaintiff [Document # 9] be granted.  It is further recommended that the Motion for Summary Judgment filed by Defendant [Document # 13] be denied.  This matter should be remanded to the Social Security Administration for further proceedings.

S/ Susan Paradise Baxter  
SUSAN PARADISE BAXTER  
Chief United States Magistrate Judge

Dated: November 29, 2007